UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDEN HARRISON,

        Plaintiff,                      CIVIL ACTION NO. 08-12413

        v.                            DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                    MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. Plaintiff alleged that she became disabled on February 9, 2005, due to tarsal tunnel syndrome affecting her feet and unrelated rectal problems.[1] The ALJ found that plaintiff had degenerative disc disease with cervical radiculopathy, carpal tunnel syndrome, and epicondylitis ("tennis elbow") but that her impairments did not meet a Listing (Tr. 15). The ALJ determined that plaintiff retained the residual functional capacity to perform a limited range of sedentary work, and could perform work such as inspector and tester which jobs existed in significant numbers. Plaintiff argues that

---

[1] At the close of the hearing, attorney Lupisella stated that plaintiff was disabled based on her testimony regarding pain, lack of sleep at night, and medication side effects. (Tr. 303) He also asked the ALJ to consider a later disability onset date of January 8, 2007, citing a doctor's opinion issued on that date. (Tr. 303-304)

the ALJ failed to properly evaluate the medical records and that therefore the hypothetical did not accurately portray plaintiff's impairments.[2]  For the reasons set forth in this Report, it is recommended that the government's motion for summary judgment be granted, the plaintiff's motion denied, and the decision denying disability benefits be affirmed.

Plaintiff was born in August, 1958.  At the time of the decision, in January 2008, plaintiff was 49 years old.  She was 46 years old at the time of her alleged onset date.  Plaintiff has a high school education and two associates degrees.  She has past relevant work in the automotive industry as a test technician (from 1990 to 1995) and as an assembly worker (from 1995 to 2005).  Plaintiff contends that the ALJ improperly evaluated the medical records and thus the hypothetical to the vocational expert (VE) did not accurately reflect plaintiff's limitations.  Plaintiff's attorney at the hearing indicated that a later onset date of January 8, 2007, would be appropriate.  Plaintiff relies on the opinion of Dr. LeClair to support her inability to work.  (Tr. 303-304)

*Standard of Review*

The issue before the court is whether to affirm the Commissioner's determination.  In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal

---

[2]It should be noted that the attorney who raises these issues now was present at the hearing during which the hypothetical situations were propounded. He made no objection to the hypothetical questions at the time. The attorney was given an opportunity for follow up questions, asked a few but raised no objection to the limitations set forth in the questions to the vocational expert.

> standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

As stated by this circuit in Ealy v. Astrue, 2009 WL 301924 (E.D. KY 2009), where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. In Howard v. Comm'r of Soc. Sec., 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the Commissioner's denial of benefits because a faulty hypothetical question did not accurately

describe the claimant's abilities.  As the court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of her individual physical and mental impairments." Id. at 239; Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Myers v. Weinberg, 514 F.2d 293, 294 (6th Cir. 1975). An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments.  See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible.  Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230,1235 (6th Cir. 1993).

*The Hearing and ALJ Determination*

Plaintiff, represented by her lawyer at the hearing, testified that she could stand or walk only about a half hour, and could sit for only a half hour due to rectal problems.  (Tr. 287) Plaintiff did not use a cane to walk and could walk one half hour.  *Id*.  She testified that her doctor restricted her from lifting more than five pounds. (Tr. 287).  Right handed, she often dropped things.  *Id*.  Bone spurs in her shoulders and neck prevented her from reaching.  Stairs and problems bending at the knees and crouching down were difficult and plaintiff attributed this to age.  (Tr. 288)

Plaintiff testified that she shared household chores with her husband, mowed her lawn with a riding mower every other week but took breaks while doing so.  She cares for two birds.

Plaintiff reports that she could drive for only a half hour, though she took a trip to Pennsylvania- albeit with frequent breaks. (Tr. 289-290)

Plaintiff took Oxycontin three times a day for pain. (Tr. 291) Plaintiff reported that her medication made her drowsy; she slept in a recliner two or three times a day for about 40 minutes each time. Since she stopped worked in 2005, plaintiff has not been in the hospital overnight and visited the ER only once for an asthma attack. (Tr. 292) Plaintiff has not had cervical fusion or carpal tunnel syndrome. (Tr. 292)

The ALJ found that plaintiff retained the ability to lift, carry, push and pull two pounds frequently and 10 pounds occasionally, using both hands. She is able to stand/walk 6 hours per 8 hour workday; and sit up to 8 hours for an 8 hour workday. Plaintiff should not climb ladders, ropes or scaffolds. She can occasionally climb stairs, stoop and crouch, but should not crawl. She is limited to frequent, but not constant, handling, fingering and feeling, and cannot engage in forceful gripping or grasping. She is limited to occasional flexion, extension and rotation of the neck. Plaintiff should not be exposed to hazards, vibration, nor concentrated fumes, dusts, or gases. (Tr. 16) Plaintiff has not had any surgery for the carpal tunnel syndrome.

Stephanee Leach testified as the vocational expert. She noted that plaintiff formerly worked as an automotive test technician, full time, as a contract employee. This job required her to fit vehicles with test equipment such as accelerometers, run a test and submit a report to the engineer. The job required an associate's degree in electronics, which she has. Plaintiff said she did not use the degree very much. She tested various types of components. It is semiskilled work and as she performed it, medium in exertional level.

The ALJ asked the VE to assume a person of the same age, education, and past relevant work as plaintiff.  The ALJ asked the VE to assume that such a person was limited to lifting/carrying no more than ten pounds occasionally and 2 pounds frequently, limited to standing/walking 6 hours an 8 hour day; sitting 8 hours of an 8 hour workday; no climbing ladders, ropes, scaffold; occasional stairs; occasional stooping and couching; limited to frequent handling, fingering, feeling; no forceful gripping or grasping; no overhead reaching; no more than occasional flexion, extension, and rotation of the neck; no exposure to hazards or vibration; no concentrated to fumes, dusts, or gases.  (Tr. 297-298)  If so, then the person would not be able to perform plaintiff's past work but that some of the skills would transfer over to the sedentary inspector positions (about 45).  There are also unskilled jobs that meet the limitations, such as reception and information clerk positions at both the sedentary and light level.  There are 1500 light reception and information clerk positions; 1700 hostess type jobs; 1000 greeter positions, and 2000 office clerk positions.  (Tr. 299-300)  At the sedentary level, there are 2800 reception and information clerk jobs, 1200 office clerk positions, 1000 inspector jobs, and 1200 unskilled bookkeeping, accounting, and auditing clerks.  No change in the number of jobs would occur even if the person were restricted from palm down lifting.  These jobs require the ability to work eight hours a day, five days a week or an equivalent work schedule.  (Tr. 301)  Only the inspector and tester, semiskilled jobs, would require frequent fingering and handling.  (Tr. 302)  If the person required a sit/stand option, sedentary office clerk jobs would be reduced to 900, inspector positions to 900, and probably the restriction would eliminate the bookkeeping, accounting, and auditing clerk positions.

*Dr. LaClair's Opinions*

Plaintiff treats with Dr. Paul LaClair, M.D., the site medical director of the Michigan Spine Care Center in Saginaw, Michigan. His medical reports are contained in a series of letters to plaintiff's attorneys and office progress notes, some of the latter are illegible. Medications are sometimes noted as "listed" but that portion of the note is not included. (E.g. Tr. 105)

Plaintiff was seen by him January 7, 2005, after injuring her wrist in a snowmobile crash two weeks earlier. (Tr. 123) She had full range of motion. She wanted some medication to help her sleep. *Id*. On January 24, 2005, she was seen for pain. She was given Demerol for hip pain and was on Vicodin Extra Strength, Soma, Wellbutrin, Diovan, Prevacid, Zyrtec, Synthroid, Singular and Ambien. (Tr. 109) On January 31, 2005, she was seen for a recheck of a small mole on her upper abdomen. (Tr. 110)  In September, 2005, she was seen for bilateral elbow pain, right worse than left. It was noted that she wanted a pain injection. (Tr. 106) In October, 2005, she was seen for a cough with congestion. (Tr. 104) In January, 2006, she was seen for a possible anal abscess. (Tr. 103) She also received treatment at another location with Dr. Hukill for her rectal pain. (Tr. 144-145)

In May, 2006, Dr. LaClair reports that plaintiff had electrodiagnostic testing and there was a moderate median neuropathy, slightly progressed from prior testing. There was also evidence of chronic bilateral C6 radiculopathies. These were stable. (Tr. 163) He also notes that plaintiff has not had surgery for her carpal tunnel syndrome nor has she had recent physical therapy. She is obese with poor posture. Her posture could be improved with physical therapy.

She was to avoid forceful or repetitive gripping, had a two pound maximum weight limit, avoid palm down lifting, and avoid use of vibrating tools. (Tr. 167)

In June, 2006, plaintiff was seen for headaches by a social worker who attributed them to stress. At that time, plaintiff was on Neurontin (increased a week before to 300 mg three times a day), Vicodin 1 to 2 tablets per day, Ambien, Soma, Synthroid, Singular, Prevacid, Zyrtec, and Diovan. (Tr. 161)

In July, 2006, Dr. LaClair reports to the attorneys that plaintiff made some progress with respect to her neck pain. She was on Neurontin 300 mg, Vicodin 1 to 2 tablets per day, Ambien, Soma, Synthroid, Prevacid, Zyrtec, Diovan and Maxair. (Tr. 159) Also in July, 2006, plaintiff completed her physical therapy program begun in May, 2006. (Tr. 166) The therapist reported that plaintiff continued to do well. She had very little pain and was able to complete household chores with little discomfort. She demonstrated good mobility, strength in the cervical spine, and reported an unrelated condition of tennis elbow. Icing of the affected areas was recommended. She was discharged with instructions to continue her home exercises. (Tr. 158)

In August, 2006, Dr. LaClair reports that plaintiff has neck and upper limb pain. She has permanent activity restrictions and had to stop Neurontin due to headaches. Her epicondylitis stress test was mildly positive on the right. Spurling's maneuver was negative bilaterally. (Tr. 157) Dr. LaClair determined to initiate a trial of Lyrica and escalate the dose to 50 mg three times a day. That was for arm pain. *Id*. In September, the Lyrica was discontinued because it,

like the Neurontin, had intolerable side effects. Keppra was prescribed with a four week follow up.[3]

In October, 2006, she saw Dr. LaClair for fatigue and night sweats. (Tr. 102) At that time, she was on Vicodin, Soma, Keppra and other medications as well. (Tr. 101, 102) In a letter to her attorneys in October, 2006, Dr. LaClair reports that plaintiff had bilateral C6 radiculopathies, bilateral carpal tunnel, and chronic right later epicondylitis. She last worked February 9, 2005. Her employer cannot accommodate light duty restrictions that were previously recommended. Plaintiff was using Keppra 500 mg once a day; this was increased to 500 mg twice a day by Dr. LaClair. He was going to fill out her disability forms from Delphi. (Tr. 155)

Plaintiff was seen in February 2007 for follow up for her tennis elbow. At that time, she was on Kadian, Keppra, Vicodin rarely, Ambien, Synthroid, Singular, Prevacid, Zyrtec, Diovan, and Nexium. She was being treated for bilateral upper extremity complaints–elbow pain and carpal tunnel syndrome. Plaintiff reported that she suffered a fall while she was carrying a laundry basket down the stairs and somehow tripped and fell. She found herself at the bottom of the stairs with pain in her neck, right elbow, and a scrape on the top of her left foot. The neck pain has been improving and the headache resolved. (Tr. 136) She denies dizziness associated with the medication, feels that it helps her pain, and does not believe the medication had anything to do with the fall. She had good cervical range of motion but with some end range

---

[3]Keppra (levetiracetam) is an anti-seizure drug prescribed for epilepsy. See, WebMD and other sites.

discomfort. (Tr. 136) She was to remain off work. Dr. LaClair stated that the last time she was returned to work, she was given a job that required repetitive use of the hands and that caused her symptoms to flare. *Id*.

Plaintiff was seen by Dr. LaClair in April 2007 for follow up for bilateral upper extremity complaints. She had a history of carpal tunnel and lateral epicondylitis. She had to discontinue Kadian due to constipation[4]. She has a history of bowel surgery. She also had to discontinue Keppra, due to swelling of her legs. At that time she was on Vicodin extra strength 4-5 tablets per day, Soma every day to twice a day as needed, Synthroid, Singular, Ambien CR, Zyrtec, Prevacid and Diovan. She was started on a trial of OxyContin, and she was advised that it could cause sedation, constipation, itching and addiction. (Tr. 121) Office notes show she was also seen for swelling on the left side of her face and in her left ear canal. She was prescribed the antibiotics Keflex and Cipro. Plaintiff was also noted to have hypertension (140/100) and was to check her blood pressure at home and return in two weeks. (Tr. 100)

In May, 2007, Dr. LaClair reports that plaintiff was in for follow up on bilateral upper extremity pain complaints. Her symptoms were noted to be well controlled as long as she avoids excessive activity with the arm. Her medications included OxyContin 10 m.g. twice a day, Vicodin daily as needed rarely; Soma twice a day as needed rarely, Synthroid, Singular, Ambien, Zyrtec, Prevacid, and Diovan. She did not appear depressed. She was alert, pleasant, and cooperative. Lateral epicondylitis stress tests were positive, left and right. (Tr. 120) Progress notes show that her blood pressure was 128/94. (Tr. 99)

---

[4]Kadian is extended release morphine sulfate. See, Kadian.com

In July, 2007, plaintiff was seen by Dr. LaClair for follow up on her carpal tunnel and lateral epicondylitis. Her symptoms were bilateral. She failed a trial return to work several months earlier. She was also undergoing further work for her bowel problem. She reported a stricture in her colon and painful bowel movements. She understands that narcotic pain killers (such as those she was taking) can be constipating, but she did not wish to discontinue her medication of Oxycontin 10 mg.[5] She also takes Vicodin, twice a day as needed; Soma, every day to twice a day as needed; Synthroid, Aygestin, Singular, Ambien CR, Zyrtec, Prevacid, stool softener, and Diovan. On examination, her lateral epicondylitis stress tests were mildly positive bilaterally. Elbow range of motion was full. Tinnel test was negative; Phalen's positive. She was to remain off work and to follow up in 12 weeks. Her OxyContin and Vicodin prescriptions were refilled. (Tr. 119)

In October, 2007, Dr. LaClair writes that plaintiff was seen for follow up. She has followed up with doctors at Riverview who have continued her off work status due to symptoms. She reported that she got some new furniture and had to clean carpeting and floors before it was delivered and in so doing had a flare up of her right elbow pain after doing cleaning for a short period of time. Her bowels are well regulated with fiber. She is on Vicodin Extra strength twice a day as needed, Soma daily to twice a day, Synthroid, Singular, Ambien CR, Zyrtec, Prevacid, Oxycontin 10 mg twice a day, Colase and Diovan. Dr. LaClair reported that the epicondylitis stress tests were positive on the right and mildly positive on the left. He refilled the Oxycontin.

---

[5]Dr. LaClair's report indicates that this is to be taken "bid"–twice a day, but plaintiff testified at the hearing she takes it three times a day.

He recommends permanent and total disability due to her chronic upper limb symptoms. She was to return in 12 weeks. (Tr. 126)

*Analysis*

Upon review of the evidence, the court finds that the ALJ set forth a detailed, highly restrictive residual functional capacity which took into account Dr. LaClair's restrictions. The ALJ took into account the two pound weight lifting restriction for frequent lifting but found that plaintiff could lift ten pounds occasionally. This is consistent with the objective findings on the diagnostic tests and plaintiff's daily activities. (Tr. 16) Further, it is consistent with the report of a medical consultant who reviewed the record in September 2005 and concluded that plaintiff could do light work and lift up to 15 pounds. (Tr. 265) The treating physician's restrictions were incorporated into the hypothetical. Therefore, plaintiff's argument in this regard is not persuasive.

Plaintiff also argues that the treating physician's opinion that plaintiff was permanently and totally disabled was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818

F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435). Here, the restrictions of the physician were incorporated into the hypothetical and where appropriate, his opinion was credited. The conclusion that plaintiff was totally disabled was based essentially on her own statements. The physical therapist noted that she had very little neck pain, had improved with physical therapy and was discharged to home exercise. The "tennis elbow" pain has not kept her from doing chores, carrying laundry, driving, visiting and otherwise functioning throughout the day.

It is of concern that she reports napping throughout the day, but that could be the result of the prescribed narcotic pain medication, taken inappropriately. Plaintiff has been prescribed both OxyContin, Vicodin and other medications by Dr. LaClair. She has reported no adverse side effects to him. While medication effects can have results which would preclude work, plaintiff has advised Dr. LaClair in the past of problems with her medication (Neurontin) and he has changed prescribed medication. Otherwise, she has reported no side effects other than constipation. With respect to plaintiff's underlying condition, the level of the objective testing was at the mild to moderate level and has been stable. The subjective symptoms of pain and limitation of work capacity appear greater than could reasonably be expected to follow from the levels documented. The ALJ took these findings into account when formulating the hypothetical. The ALJ's determination that the findings limited her functioning greatly but not to the extent that it would be totally disabling is supported by substantial evidence.

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, plaintiff's motion denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: March 4, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing report and recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 4, 2009.

                                                         s/Jane Johnson
                                                         Case Manager to
                                                         Magistrate Judge Virginia M. Morgan